# LOUISVILLE TRUST COMPANY *v.* KNOTT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF KENTUCKY.

No 389. Submitted October 13, 1903.—Decided November 30, 1903.

The question of jurisdiction which the Judiciary Act of March 3, 1891,
c. 517, 26 Stat. 826, permits to be certified directly to this court must be
one involving the jurisdiction of the Circuit Court as a Federal court,
and not simply its general authority as a judicial tribunal to proceed in
harmony with established rules of practice governing courts of concur-
rent jurisdiction as between themselves. Where the Circuit Court has
jurisdiction and appoints a receiver the question of jurisdiction under
the above act cannot, on the intervention of a receiver appointed by the
state court, be decided and certified directly to this court to ascertain
whether the Circuit Court or the state court had prior authority over
the trust estate involved in the litigation.

This court need not consider itself bound as to a question of jurisdiction
because it may have exercised jurisdiction in a case where the question
might have been raised but passed *sub silentio*. *United States v. More*,
3 Cranch, 159, 172.

THIS case arises out of the conflicting claims by the Circuit
Court of the United States for the Western District of Ken-
tucky, and the Circuit Court of Jefferson County, Kentucky,
Chancery Branch, as to the right to administer the property
and affairs of the Evening Post Company, a corporation of
Kentucky.

The Federal court having possession, by its Receiver, of the
property of that company, declined to surrender possession
to the Louisville Trust Company, the Receiver appointed by
the state court. From the final order dismissing the inter-
vening petition of the latter company, the present appeal was
prosecuted. That order stated: "This appeal is granted solely
upon the question of jurisdiction over the subject-matter of
the trust estate of the Evening Post Company in controversy,
and the question of whether this court, or the said Jefferson

Circuit Court, Chancery Branch, First Division, has prior jurisdiction in [is] the single question upon which this cause is decided as to the said Louisville Trust Company; this court holding that its jurisdiction over the said trust estate of the Evening Post Company is prior and exclusive of the said Jefferson Circuit Court, Chancery Branch, First Division, all of which is hereby certified on the appeal of the said Louisville Trust Company as Receiver, &c., to the Supreme Court of the United States for review as required by law."

It will be more satisfactory and conduce to a clear understanding of the precise grounds upon which our decision must rest if the principal facts in the history of this controversy be stated.

On the 30th day of April, 1903, at a meeting of the stockholders of the Post Company, a resolution was adopted—all the stockholders except the owners of forty-eight shares concurring—by which the Columbia Finance and Trust Company was appointed liquidator of that corporation, with authority to conduct its business and affairs for the benefit of stockholders until its property could be sold and possession delivered to the purchaser in accordance with the statute of Kentucky. The liquidator was directed from the proceeds of sale to pay the debts of the corporation, and to distribute any balance remaining among stockholders according to their legal rights. It took immediate possession of all the property, books and papers of the Post Company.

On the 10th day of May, 1903, another corporation was organized under the laws of Kentucky. It is referred to in the record as the New Evening Post Company. To that company the liquidator on May 18th, 1903, leased the property and assets of the old company, until a sale should take place.

Prior to the making of that instrument, to wit, on May 12th, 1903, the executors and executrix of the estate of W. N. Haldeman commenced a suit in the Jefferson (Kentucky) Circuit Court, Chancery Branch, First Division, against the old Post

Company, the Columbia Finance and Trust Company, Richard W. Knott, J. M. Atherton, John R. Knott, Eugene Q. Knott and Laura G. Boyle—the plaintiffs and the individual defendants being respectively owners of stock in the old company. The object of that suit, as disclosed by the petition, was to obtain a settlement of the accounts of the company and of its liquidator; and to that end the plaintiffs asked a reference of the cause to the commissioner of the court to audit and settle the accounts of the Columbia Finance and Trust Company, and after such auditing and settlement, that the assets of the company be sold, and the proceeds distributed according to law. The plaintiffs further prayed that pending the action and until the final liquidation of the affairs of the old company and the sale of its assets, the court determine whether its affairs should be continued in operation, and if so that the management of the plant be under the direction of the court; further, that a preliminary order be entered, commanding and directing the defendants and each of them to allow the plaintiffs reasonable access to and an examination of the books, papers, documents and affairs of the old company, including all documentary information in connection therewith in the possession of defendants or of either of them.

On the 19th of May, 1903, upon due notice, the plaintiffs moved for an order directing the defendants to allow the plaintiffs, their counsel and accountant, reasonable access to and inspection of the books, records and documents of the old company, relating to its assets, liabilities and business affairs. To that motion the defendants objected, and the motion was assigned for hearing on May 23d, 1903. On the day last named the parties appeared, the plaintiffs filed affidavits in support of their motion, and the defendants interposed a demurrer to the petition, as well as filed their several answers. The motion and demurrer were heard in part, and the further hearing of them was postponed until May 25th, 1903. On the latter day, the hearing not being concluded, the cause was postponed until the 30th of May, on which day it was sub-

mitted on the pending motion of plaintiffs, on defendants' demurrer to the petition, and on a motion of the Columbia Finance and Trust Company, entered on that day, for leave to file an amended and supplemental answer. By an order entered June 4th, 1903, the plaintiffs' motion, made on the 19th day of May, 1903, was sustained, and the defendants, and each of them, were commanded and directed, until the further orders of the court, to allow and afford the plaintiffs, their attorneys or accountant, during business hours, reasonable access to and an inspection of the books, records and documents of the Post Company, touching its condition and business affairs, and especially touching its assets and liabilities, and the considerations paid or received therefor. The demurrer of the defendants was also overruled, and the objection to the filing of the amended and supplemental answer of the Columbia Finance and Trust Company, trustee, tendered May 30th, 1903, was sustained.

While the above motion in the state court was pending, Stuart R. Knott, a citizen of Missouri, and not a party to the suit in the state court, obtained, May 26th, 1903, in the Circuit Court of the United States for the Western District of Kentucky, a judgment against the old company for $6,000 with interest from April 30th, 1903. Upon that judgment execution immediately issued and was returned the next day, May 27th, 1903, "no property found." And on the latter day the present suit was commenced by him in the United States Circuit Court, against the Evening Post Company, Columbia Finance and Trust Company, R. W. Knott, B. G. Boyle and E. Q. Knott, each defendant being a citizen of Kentucky. The prayer of the bill was that the court at once appoint a Receiver of all the rights, properties, franchises, books of account, records, documents, choses in action and all other things belonging to the Post Company, forthwith to report what such property is, and what arrangement can be made for the continued publication of said paper until a decree could be entered directing a sale herein; that all proper

equitable relief may be had looking to the administration of the estate of the company and the payment of its just debts; and to that end the sale of its property and the bringing of any money produced by such sale into the registry of the court for distribution among creditors.

On the 28th day of May, 1903, all the defendants in the suit in the United States Circuit Court assenting thereto, a Receiver of the property and assets of the Post Company was appointed by that court, and the defendants were directed forthwith to deliver to him all such property and assets of every kind and description. That Receiver took immediate possession and, under the authority of the court, entered into a contract with the new company for the publication of the paper until the assets of the old company were sold.

The plaintiff in the suit in the state court entered, June 13th, 1903, a formal motion to appoint a Receiver to take charge of and manage the property and affairs of the Post Company; and on June 18th the defendants in that suit appeared and objected to the motion upon the ground that the assets of the company were already in the possession and under the control of a Receiver appointed by the United States Circuit Court in the suit instituted by Stuart R. Knott. This objection was overruled, and the state court, by order entered June 27th, 1903, appointed the Louisville Trust Company receiver, with authority to claim and take possession of the property and assets of the Post Company. By the same order the commissioner of the court was directed to audit, state and settle the accounts of the Columbia Finance and Trust Company as liquidator and trustee of the old Post Company.

Subsequently, June 30th, 1903, the state court, by order then entered, directed its Receiver to intervene in the suit instituted in the Federal Court and claim the estate in question for administration and settlement in the state court. The latter court was of the opinion that its jurisdiction to administer the said trust estate first attached, and in order that the relief sought at its hands might be granted it was neces-

sary that it have possession and control of the property of the Post Company. Its Receiver was therefore ordered to intervene in the suit pending in the Federal court, claim the trust estate for administration and settlement in the state court, and test the question as to the prior jurisdiction of the state court over the subject matter.

Pursuant to that order the Louisville Trust Company intervened in the suit in the Federal court and moved that its Receiver be directed to turn over the property to the Receiver of the state court. This motion was denied, Judge Evans, of the Federal court, accompanying the denial of the motion with an elaborate opinion, *Knott* v. *Evening Post Co.*, 124 Fed. Rep. 342, which concluded as follows: "First, that the proceedings in the suit in the state court, when given their just effect, had not in any way when this court's Receiver was appointed, brought into the custody of that court any property of the Evening Post Company, nor could they be regarded as having, in fact, done so even if their scope were measured by the prayer of the plaintiff's petition, rather than its averments; second, that it was, therefore, open to this court to appoint a Receiver, and thereby judicially seize the property of the company at the instance of a judgment creditor; and, third, that having thus first acquired jurisdiction over the property thus seized, the established principles of law and the plain rights of the judgment creditor demand that this court shall maintain its jurisdiction over it under these circumstances as certainly as it would have abandoned it if the first seizure had been by the state court. It results that the motion of the intervening petitioner must be overruled and denied, and intervening petition dismissed."

*Mr. John L. Dodd, Mr. David W. Baird, Mr. J. C. Dodd, Mr. Aaron Kohn* and *Mr. T. W. Spindle* for appellant:

The Federal circuit court, sitting at Louisville in the Western District of Kentucky, has no supervisory or revisory power over suits properly instituted and pending in a state

circuit court of concurrent jurisdiction over the same terrítory. § 720, U. S. Rev. Stat.; *Haines* v. *Carpenter*, 91 U. S. 254; *Sargent* v. *Helbon*, 115 U. S. 350; *Taylor* v. *Carryl*, 20 How. 595; *Wiswall* v. *Sampson*, 114 How. 65; *Peck* v. *Jenness*, 7 How. 624; *In re Tyler*, 149 U. S. 181; *Orton* v. *Smith*, 18 How. 266; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; *Covell* v. *Hyman*, 111 U. S. 182; *Gumbel* v. *Pitkin*, 124 U. S. 143; *Moran* v. *Sturgis*, 154 U. S. 256; *Central Bank* v. *Stevens*, 169 U. S. 432; *Shields* v. *Coleman*, 157 U. S. 178; *Harkrader* v. *Wadley*, 172 U. S. 148; *Farmers Loan Co.* v. *Lake St. Rd. Co.*, 177 U. S. 61; *Merritt* v. *Am. Steel Barge Co.*, 79 Fed. Rep. 231; *S. C.*, 24 C. C. A. 530; *Heidritter* v. *Oil Cloth Co.*, 112 U. S. 294, 305; *Adams* v. *Mercantile Trust Co.*, 66 Fed. Rep. 621; *S. C.*, 30 U. S. App. 204; *S. C.*, 15 C. C. A. 1; *Hatch* v. *Bancroft*, 67 Fed. Rep. 807; *Powers* v. *Blue Grass Bld'g Assn.*, 86 Fed. Rep. 705.

*Mr. Alexander P. Humphrey* and *Mr. James P. Helm* for appellee:

The lower court did not err in refusing to surrender to the state court the control over assets acquired almost a month before the state court was asked or undertook to appoint a receiver. See cases cited in opinion of the Circuit Court. Amongst them *Shields* v. *Coleman*, 157 U. S. 177; *Gaylor* v. *Ft. Wayne &c. R. R.*, 6 Bissell, 286, 291; *Moran* v. *Sturgis*, 154 U. S. 256, 270; High on Receivers, 3d ed. § 50; *Compton* v. *Jesup*, 68 Fed. Rep. 263; *Dickerman* v. *Northern Trust Co.*, 176 U. S. 188.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

We are of opinion that the judgment of the Circuit Court dismissing the intervening petition of the Louisville Trust Company is not subject to review here upon direct appeal or writ of error to that court.

By the Judiciary Act of March 3d, 1891, c. 517, 26 Stat. 826, an appeal or a writ of error, as the one or the other mode may be proper, can be taken directly from a Circuit Court to this court in certain specified cases, among which is "any case in which the jurisdiction of the court is in issue;" and "in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision." § 5. In all cases, other than those specified in section five of that act, the Circuit Court of Appeals is given appellate jurisdiction. § 6.

The question presented by the certificate of the Circuit Court is not one of *jurisdiction*, within the meaning of the fifth section of the act of 1891, and the jurisdiction of that court was not "in issue." There was diversity in the citizenship of the parties to this suit, instituted by Stuart R. Knott as a citizen of Missouri, and no question was raised, or could have been raised, as to the authority of the Circuit Court, as a Federal court, to take cognizance of it. The issue made by the intervening petition of the Louisville Trust Company did not involve the jurisdiction of that court, as a Federal tribunal, to appoint a receiver of the assets and property of the Evening Post Company. What the Circuit Court did in that respect was questioned by the Trust Company, on behalf of the state court, solely upon the ground that the taking by the Federal court of possession of the property and assets of the Post Company—after the state court by the institution of the Haldeman suit had acquired authority to appoint a receiver of such property and assets for administration—was in violation of the rule recognized in courts of equity, whether of Federal or state origin, that "where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court;" that, as the object of the suit in the state court could not be accomplished without possession of the property and assets of the Post Company, the seizure of such property and assets under the order of the Federal court, whereby the state court was prevented from giving any

effectual relief to the parties before it, was inconsistent with the relations which, upon principles of comity and right, always exist between courts having concurrent jurisdiction over the same subject matter. *Peck* v. *Jenness,* 7 How. 612, 624; *Taylor* v. *Carryl,* 20 How. 583, 596.

In all this there was nothing involving the jurisdiction of the Circuit Court as a Federal tribunal, whose jurisdiction is regulated by acts of Congress. The question of jurisdiction which the statute permits to be certified to this court directly must be one involving the jurisdiction of the Circuit Court as a Federal court, and not simply its general authority as a judicial tribunal to proceed in harmony with established rules of practice governing courts of concurrent jurisdiction as between each other.

We think this question was substantially so determined in *Smith* v. *McKay,* 161 U. S. 355, 357. That was a suit in equity for an injunction to restrain the defendants from using certain patented machines until they had fully paid the fees they had agreed to pay to the patentee. The defendants moved to dismiss the bill upon the ground that there was a plain, adequate, and complete remedy at law—thus raising only a question of equity jurisdiction. The motion to dismiss was denied. After final decree for the plaintiff, the case was brought directly to this court by appeal, and it was assigned for error that the Circuit Court erred in not dismissing the suit for want of jurisdiction. The position of the appellee in that case was that only questions of Federal jurisdiction could be brought directly here; and that if the Circuit Court had jurisdiction of the parties and of the matters in dispute, the fact that the remedy of the plaintiff was at law, rather than in equity, raised no question of jurisdiction within the meaning of the fifth section of the Judiciary Act of March 3d, 1901, under which the appeal was taken.

The court observed that the question had never been directly decided by it, but that it arose in the *World's Columbian Exposition case,* 18 U. S. App. 42, in which the Circuit Court

sitting in equity granted an injunction to prevent the opening of the Exposition Grounds to the public on Sunday. That case was taken by appeal to the Circuit Court of Appeals for the Seventh Circuit, and a motion was there made to dismiss the appeal. Chief Justice Fuller, speaking for that court, said: "The appellees have submitted a motion to dismiss the appeal upon the grounds that the jurisdiction of the Circuit Court was in issue; that the case involved the construction or application of the Constitution of the United States; that the constitutionality of laws of the United States was drawn in question therein; that therefore the appeal from a final decree would lie to the Supreme Court of the United States, and not to this court; and hence that this appeal, which is from an interlocutory order, cannot be maintained under the seventh section of the Judiciary Act of March 3d, 1891. We do not understand that the power of the Circuit Court to hear and determine the cause was denied, but that the appellants contended that the United States had not, by their bill, made a case properly cognizable in a court of equity. The objection was the want of equity, and not the want of power. The jurisdiction of the Circuit Court was, therefore, not in issue within the intent and meaning of the act."

Referring to these observations of the Chief Justice, this court in *Smith* v. *McKay* said: "We regard this as a sound exposition of the law, and applied to the case now in hand, it demands a dismissal of the appeal, on the ground that the objection was not to the want of power in the Circuit Court to entertain the suit, but to the want of equity in the complainant's bill. The appellant's contention in this respect would require us to entertain an appeal from the Circuit Court in every case in equity, in which the defendant should choose to file a demurrer to the bill on the ground that there was a remedy at law. When the requisite citizenship of the parties appears, and the subject matter is such that the Circuit Court is competent to deal with it, the jurisdiction of that court attaches, and whether the court should sustain the complain-

ant's prayer for equitable relief, or should dismiss the bill with leave to bring an action at law, either would be a valid exercise of jurisdiction. If any error were committed in the exercise of such jurisdiction, it could only be remedied by an appeal to the Circuit Court of Appeals." 161 U. S. 355, 358.

In principle, the judgment in *Smith* v. *McKay* embraces the present case. The issue presented by the intervening petition did not raise any question under the Constitution or statutes of the United States, and depended only upon principles of general law applicable to all courts having concurrent jurisdiction over the same subject matter. We repeat that the jurisdiction of the Circuit Court was not and is not questioned for want of power in that court, as a Federal tribunal, to take possession of the assets and property of the Post Company; only its authority, upon principles of equity and comity, to do that of which complaint was made by the Louisville Trust Company. We do not think that Congress intended that any such question should be the basis of a direct appeal to this court from a Circuit Court.

The question again arose in *Blythe* v. *Hinckley*, 173 U. S. 501, 506, where this court said: "Appeals or writs of error may be taken directly from the Circuit Courts to this court in cases in which the jurisdiction of those courts is in issue, that is, their jurisdiction as Federal Courts, the question alone of jurisdiction being certified to this court. The Circuit Court held that the remedy was at law and not in equity. That conclusion was not a decision that the Circuit Court had no jurisdiction as a court of the United States. *Smith* v. *McKay*, 161 U. S. 355; *Blythe Co.* v. *Blythe*, 172 U. S. 644. The Circuit Court dismissed the bills on another ground, namely, ᵗ ᴖₐt the judgments of the state courts could not be reviewed by that court on the reasons put forward. This, also, was not in itself a decision of want of jurisdiction because the Circuit Court was a Federal court, but a decision that the Circuit Court was unable to grant relief because of the judgments rendered by those other courts." If we were to take jurisdiction

on this certificate, we could only determine whether the Circuit Court had jurisdiction as a court of the United States, and as the decree rested on no denial of its jurisdiction as such, but was rendered in the exercise of that jurisdiction, it is obvious that this appeal cannot be maintained in that aspect."

It is proper to observe that this court in *Shields* v. *Coleman*, 157 U. S. 168, 177, assumed jurisdiction upon direct appeal from a Circuit Court in a case involving the question whether that court had authority to appoint a receiver of property which was at the time in the possession of a receiver appointed by a state court. As the Federal court had, in that case, taken property out of the physical possession of a receiver of the state court, this court expressed its views upon the question whether the possession of the state court should have been disturbed by the Federal court, and it rendered judgment accordingly. But the precise question here presented as to the jurisdiction of this court under the act of 1891, on direct appeal from the Circuit Court, was not there raised or considered. In *United States* v. *More*, 3 Cr. 159, 172 (1805), it was held that this court was without jurisdiction, under the law as it then was, to review the final judgment of the Circuit Court of the District of Columbia in a criminal case. It was suggested at the bar, in that case, that this court had, in a previous case, exercised appellate jurisdiction in a criminal case. Chief Justice Marshall met that suggestion by saying: "No question was made in that case as to the jurisdiction. It passed *sub silentio*, and the court does not consider itself as bound by that case." To the same effect, substantially, are *United States* v. *Sanges*, 144 U. S. 310, 319, and *Cross* v. *Burke*, 146 U. S. 82.

In the circumstances of the present case, and to avoid misapprehension in the future, we deem it our duty distinctly to declare the true meaning of the word jurisdiction as used in the fifth section of the Judiciary Act of 1891.

For the reasons stated, the appeal from the Circuit Court must be dismissed for want of jurisdiction in this court.

*It is so ordered.*