DAVIS et al. v. ANDERSON–TULLY CO.

(Circuit Court of Appeals, Eighth Circuit. September 2, 1918.)

No. 5086.

1. COURTS ☞405(5)—FEDERAL COURTS—CIRCUIT COURT OF APPEALS—APPELLATE JURISDICTION.

The Circuit Court of Appeals has jurisdiction to review a judgment of the District Court dismissing an action in ejectment on objection that the lands in controversy were not within the territorial jurisdiction of the District Court, as such an objection does not challenge federal jurisdiction.

2. APPEAL AND ERROR ☞1008(1)—REVIEW—FINDINGS OF FACT.

Regardless of the rule as to review of findings of fact in case tried without a jury, the appellate court will examine the evidence of the facts, where a review of the decision of the trial court on jurisdiction is invoked, although there is a presumption of the correctness of the trial court's decision.

3. STATES ☞12(2)—BOUNDARIES—NAVIGABLE WATERS—CHANNEL OF STREAM.

Where the main channel of a navigable stream is the boundary between two states, and it changes by the slow and natural processes of accretion and reliction, the boundary follows the channel; but, where it changes by the sudden and violent process of avulsion, the boundary remains

where the main channel was at the time of the avulsion, subject to such changes as may be wrought thereafter by accretion or erosion, while the old channel is occupied by the running stream.

4. NAVIGABLE WATERS ☞44(3)—ACCRETION—RIPARIAN RIGHTS.

When a navigable stream changes its main channel of navigation, not by creeping over the intermediate lands between the old channel and the new one, but by jumping over them or running around them, and making or adopting a new course, the boundary remains in the old channel subject to subsequent changes, while the water in it remains a running stream, etc., notwithstanding the fact that the change from the old channel to the new one was wrought gradually during several years, etc.

5. STATES ☞12(2)—BOUNDARIES—NAVIGABLE STREAMS.

In ejectment, held, that the lands in controversy were in Mississippi instead of Arkansas, the old channel of the Mississippi river, which was directly under the Arkansas bank, remaining the boundary between the states, notwithstanding the diversion of the channel into a cut-off; and so the District Court for Arkansas was without jurisdiction.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by W. L. Davis and the Sudan Plantations Company against the Anderson-Tully Company. There was a judgment dismissing the action, and plaintiffs bring error. Affirmed.

G. J. McSpadden, of Memphis, Tenn., and John I. Moore, of Helena, Ark., for plaintiffs in error.

R. G. Brown, of Memphis, Tenn. (H. B. Anderson, of Memphis, Tenn., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

SANBORN, Circuit Judge. W. L. Davis and Sudan Plantations Company, a corporation, hereafter called the "plaintiffs," complain of the judgment of the court below, which dismissed their actions in ejectment for the recovery of the possession of lands, for damages for their detention, and for the taking of timber therefrom by the Anderson-Tully Company, a corporation, henceforth called the "defendant." In their complaint the plaintiffs alleged that the lands were situated in the state of Arkansas; that they own them, and are entitled to the possession of them; that the defendant unlawfully detained them and has cut and removed timber from them to the damage of the plaintiffs. They also averred that these lands were in and appurtenant to the east half of section 11 and the east half of section 14, township 2 north, range 5 east. The defendant denied the material allegations of this complaint and alleged that the lands of the plaintiffs in these sections were bounded on the east by a lake 800 feet wide and 8 to 12 feet deep; that the defendant owned and was in possession of that portion of the lands described in the plaintiff's complaint which were east of the lake; and that it was from this portion of the lands that the defendant had cut wood and timber; but that these lands which the defendant owned and detained were not in the state of Arkansas and that the District Court of the District of Arkansas had no jurisdiction of the subject-matter in controversy in

these actions. A jury was waived, the case was tried by the court, the court made special findings of the facts, and among them that the plaintiffs had failed to prove that the lands in controversy were within the state of Arkansas. It accordingly dismissed the plaintiff's actions for want of jurisdiction without adjudging any other issue.

[1] The first question which the case suggests is whether the jurisdiction to review this judgment is in the Supreme Court or in this court. It falls under the literal terms of the first rule stated in U. S. v. Jahn, 155 U. S. 109, 114, 15 Sup. Ct. 39, 41 (39 L. Ed. 87):

"That if the jurisdiction of the Circuit Court is in issue and decided in favor of the defendant, as that disposes of the case, the plaintiff should have the question certified and take his appeal or writ of error" to the Supreme Court.

But, since the objection to the jurisdiction of the District Court which prevailed below, that the lands which are the subject of the action are not within its territorial jurisdiction is an objection common to all judicial tribunals and is not an objection to the jurisdiction of the District Court as a federal court, this court has jurisdiction to review the judgment which sustains that objection. Courtney v. Pradt, 196 U. S. 89, 91, 92, 25 Sup. Ct. 208, 49 L. Ed. 398; Louisville Trust Co. v. Knott, 191 U. S. 225, 233, 24 Sup. Ct. 119, 48 L. Ed. 159; Mexican Central Ry. Co. v. Ekman, 187 U. S. 429, 432, 23 Sup. Ct. 211, 47 L. Ed. 245; Blythe v. Hinckley, 173 U. S. 501, 507, 19 Sup. Ct. 497, 43 L. Ed. 783; Bache v. Hunt, 193 U. S. 523, 525, 24 Sup. Ct. 547, 48 L. Ed. 774; Merriam v. Saalfield, 241 U. S. 22, 26;[1] Smith v. McKay, 161 U. S. 355, 16 Sup. Ct. 490, 40 L. Ed. 731; Blythe Co. v. Blythe, 172 U. S. 644, 19 Sup. Ct. 873, 43 L. Ed. 1183.

[2] Counsel for the defendant invoke the rule that where a jury is waived, the case is tried by the court, and the court makes special findings of fact, the only issues that can be reviewed in a federal appellate court are the sufficiency of the facts found to sustain the judgment, and the rulings of the court in the progress of the trial, if excepted to at the time and duly presented by a bill of exceptions. That rule undoubtedly governs the review of the trial of the merits of a case by a court which makes special findings. But where a review of the decision of the jurisdiction of the trial court is invoked, while the presumption is indulged that the decision of the lower court is correct, the duty nevertheless is imposed upon the appellate court to examine the evidence of the facts and to reverse the decision if it finds that the findings of fact were clearly wrong. Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 250, 256, 29 Sup. Ct. 445, 53 L. Ed. 782.

[3-5] The controlling issue for consideration and decision therefore is: Does the evidence in this case fairly prove that the finding of the court below that the lands in controversy were not in the state of Arkansas was erroneous? The principal facts in this case are either admitted or established beyond controversy, and among them these: The lands in dispute are claimed by the plaintiffs by virtue of their title to the east half of sections 11 and 14, in township 2 north, range 5 east, according to the United States government survey. Accord-

[1] 36 Sup. Ct. 477, 60 L. Ed. 868.

ing to the original United States government surveys made on the Arkansas side in 1823 and on the Mississippi side in 1835 and 1836, these half sections were riparian lands on the west or Arkansas bank of the Mississippi river as it flowed southerly around Walnut Bend. At the times of these surveys and until about the year 1873, the river coming at that place from the southeast first flowed in a northwesterly direction until it reached the most northerly part of Walnut Bend, then southerly and southeasterly past the eastern parts of sections 11 and 14, and, on its return towards the southeast, it left a peninsula on the Mississippi side containing several thousand acres of land. The defendant claims the lands in dispute under titles to a part of this peninsula and accretions thereto, and insists that it is on the Mississippi side of the river. At the time of the original surveys Whisky Chute and Bordeau Chute extended through this peninsula within the bend, and in high water some of the waters of the river flowed through these chutes from the northeast to the southwest. Whisky Chute was northwest of Bordeau Chute, and the head of the peninsula was northwest of Whisky Chute and was called Whisky Island, while the portion of the peninsula between the two chutes was called Bordeau Island. Some time between 1871 and 1875, and probably about 1873, the main channel of navigation of the river and the larger volume of its water changed its course from its bed around the bend to Bordeau Chute or cut-off, and they have never returned to Walnut Bend, although water flowed and packet boats passed around through that bend for at least ten years thereafter, and perhaps longer, and there still remains in the old river alongside its Arkansas bank, as that bank stood at the time the cut-off was made, on and along the east half of sections 11 and 14 a lake several miles long, 600 or 800 feet wide, and from 6 to 12 feet deep. Since 1874 a large part of the river bed as it was when the cut-off took place has been filled by sediment, and trees have grown on parts of it; but the Arkansas bank and its location as it was when the cut-off was made are clearly established by the evidence. That bank is still discernible upon the ground, and it was and is on the east half of sections 11 and 14 at various distances west of the line of the Arkansas bank as it was found in 1823 by the United States government surveyors and as it was described in their field notes and maps of their survey of that year. All the lands described by the plaintiffs in their complaint lie east of this Arkansas bank as it stood when the main channel of the river was changed to Bordeau Chute. All that portion of the lands described in the plaintiffs' complaint which the defendant claims, all that portion of which the defendant is in possession, and all that portion upon which the wood and timber were cut, lie east of the lake which extends along the east side of the Arkansas bank of the river as it stood when the main channel of the river was changed to Bordeau Chute. The defendant insists that the boundary between the states of Arkansas and Mississippi runs through this lake, so that the lands whose title is in controversy in this action are in the state of Mississippi. On the other hand, the plaintiffs contend that the boundary line between the states is the middle line of the old bed of the river as that bed was located by the original United States gov-

ernment surveys of 1823 and 1835 and 1836, which middle line is at varying distances east of the east line of the lake, and, if this middle line is the true boundary between the states, a part if not all of the lands, the titles of which are in question in these actions, are in the state of Arkansas. Up to this point there is no real controversy between the parties to these actions, but they disagree as to the rule of law applicable to the facts and as to some of the pertinent facts to be hereafter mentioned.

The plaintiffs assert that the change of the main channel from Walnut Bend to Bordeau Chute was caused by an avulsion, while the defendants insist, and the court found, that it was not so caused, but was the result of gradual and imperceptible changes. The court, however, also found that the main channel of the river around through the bend at the time of its change from bend to chute, as subsequently changed by accretion and erosion, was and still is the boundary line between the states of Arkansas and Mississippi. The general rule is: (1) That, where the main channel of a navigable stream is the boundary between two states and it changes by the slow and natural processes of accretion and reliction, the boundary follows the channel; and that (2) where it changes by the sudden and violent process of avulsion, the boundary remains where the main channel was at the time of the avulsion, subject always to such changes as may be wrought after the avulsion by accretion or erosion while the old channel is occupied by a running stream. Arkansas v. Tenn., 246 U. S. 158, 38 Sup. Ct. 304, 62 L. Ed. 638; Cissna v. State of Tennessee, 246 U. S. 289, 38 Sup. Ct. 306, 307, 62 L. Ed. 720. But the first clause of this rule was made to govern and is applicable to cases where, by the slow and natural processes of accretion and erosion, the main channel creeps over the land between its old and its new course. To the rule stated in this clause there is a well-established and rational exception. It is that when a navigable stream changes its main channel of navigation, not by creeping over the intermediate lands between the old channel and the new one, but by jumping over them or running around them and making or adopting a new course, the boundary remains in the old channel subject to subsequent changes in that channel wrought by accretion and erosion while the water in it remains a running stream, notwithstanding the fact that the change from the old channel to the new one was wrought gradually during several years by the increase from year to year of the proportion of the waters of the river passing over the course which eventually became the new channel, and the decrease from year to year of the proportion of its waters passing through the old channel until finally the new channel became the main channel of navigation. Missouri v. Kentucky, 11 Wall. 395, 408, 20 L. Ed. 116; Washington v. Oregon, 211 U. S. 127, 135, 29 Sup. Ct. 47, 53 L. Ed. 118.

The evidence in the record in hand upon the question of avulsion vel non is conflicting; but that question is immaterial, because if there was no avulsion this case falls under the exception to the rule of gradual change. The strongest evidence in support of gradual change goes only to prove that for several years prior to the cut-off, which was

probably in the spring of 1873, larger volumes of water had been flowing through Bordeau Chute year after year, until residents in the vicinity and those familiar with the river expected the change, and until finally the channel through the chute carried deeper water and was more navigable than the channel around the bend, and then the former became the main channel of navigation and the use of the old channel for commercial purposes and the waters in it gradually receded. There were thousands of acres of land between the old channel and the new one. There was no evidence that the river or its channel crept over these lands by the gradual processes of accretion and erosion. The proof was that the waters of the river gradually cut a new channel south of these lands and abandoned the channel northwest of them, and the conclusion is that the boundary between the states remained in the old channel of navigation around the bend as it was at the time that the course through Bordeau Chute became the main channel of navigation, and that that boundary now is where that old channel, by the processes of accretion and reliction, had become at the time when the waters flowing through it around the bend became stagnant and ceased to be a running stream.

Thus the final question becomes: Where was the main channel of the old river around the bend when that river ceased to be a running stream? Counsel for the plaintiffs argue, and cite testimony to support the contention, that when the cut-off was made the main channel was in the middle of the old bed of the river as that bed is defined by the original surveys of 1823 and 1835 and 1836, and that it was never moved or changed by accretion or erosion, and that it still remains there. But defendant's counsel contend that at the time the cut-off was made the main channel of navigation of the old river was directly under the Arkansas bank in what is now the lake which lies just east of that bank. Upon this issue, maps, charts, surveys, and testimony, too voluminous for recital or review, were introduced in evidence and have been patiently read and examined. They have convinced that from 1823 until the time of the change of the main channel of navigation to Bordeau Chute the river ran around through Walnut Bend, that the Arkansas bank of the river along the east side of or upon the east half of sections 11 and 14 was during all this time a bank which curved inward around the flowing river, that, where a navigable river flows between an island or the head of a peninsula upon one side and an inwardly curving bank upon the other side, it ordinarily hugs the curving bank, that that bank is generally eroded and often caves, that accretions ordinarily attach to the island or peninsula, that the deepest and more navigable part of the stream and its main channel of commerce ordinarily adjoins the curving bank, that during those years from 1823 to 1873 the Mississippi river followed this ordinary course and had this effect as it flowed through Walnut Bend, that when the main channel of navigation was changed to Bordeau Chute that channel was near the Arkansas bank as that bank then and now stands and was in that portion of the river which has now become the lake immediately east of that bank, that the channel has not been moved easterly by accretion, reliction, or erosion since the change of the main

channel of navigation to Bordeau Chute, that the boundary between the two states remained in that main channel of the river after the change, and is now in the lake east of and adjoining the Arkansas bank as it was when the cut-off was made and the lands east of the lake, the title to which, and the alleged trespasses upon which, are here in controversy, are in the state of Mississippi and without the jurisdiction of the court below. The evidence in this case fails to fix the exact line of the old channel in this lake, or the exact boundary line between the states therein, and there may be some portions of the lands described in the complaint in this action which lie under the water of the lake west of this land. But the defendant is not in possession of any of that land and makes no claim to it. The only land concerning which there is any controversy in this case lies east of that line, and of that controversy the court below had no jurisdiction.

Its judgment was therefore right, and it is affirmed.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes